## Richmond

### Wayne Pell Joyce v. Commonwealth of Virginia.

October 13, 1969.

Record No. 6910.

Present, Snead, C. J., and l'Anson, Carrico, Gordon and Harrison, JJ.

*George B. Cooley,* for plaintiff in error.

*Anthony F. Troy, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error.

Snead, C.J., delivered the opinion of the court.

On February 23, 1967, Wayne Pell Joyce, defendant, was found guilty on an indictment charging that he did in the daytime break and enter the dwelling house of Josie Largen with intent to commit abduction. The jury fixed his punishment at confinement in the State penitentiary for a period of four years and the trial court sentenced him accordingly.

The sole issue presented in this appeal is whether the evidence is sufficient to sustain the conviction.

The Commonwealth's evidence consisted of the testimony of State Trooper Troy G. Maggard and Mrs. Fannie Horton. The defendant neither testified nor offered any evidence in his behalf.

The facts are not in dispute. On the morning of November 5, 1966, Joyce and another man, Charles Bowers, escaped from the Carroll county jail. During the course of the escape they armed themselves each with a .38 calibre service revolver taken from deputy sheriffs; in addition Joyce had on his person a small derringer type pistol. Trooper Glenn Maggard, unaware that an escape was in progress, entered the jail and was taken prisoner by Joyce and Bowers. They removed the cartridges from Maggard's revolver, forced him to accompany them and fled in his patrol car, Joyce driving. They rode for approximately seven miles to the home of a stranger, Mrs. Josie Largen, which is situated about 200 yards off State Route 673 in Carroll county. Mrs. Largen was eighty-eight years old and lived in her home with her daughter, Mrs. Fannie Horton, age fifty-eight.

Joyce drove up to the house, got out of the car, told Bowers to keep Maggard "covered", went up on the porch, opened the front door, which was closed, and walked in. Inside, he found Mrs. Largen and Mrs. Horton, inquired as to the former's health and stated he "was going to stay" two hours. He was told he could not and to leave the premises. Joyce replied that he would leave in a few minutes and proceeded to give the five-room house a cursory search. He asked if there were any guns or a telephone there and was informed there was "neither one".

Joyce then went back to the car and told Bowers to bring Trooper Maggard inside. Bowers had his pistol in his hand and all three entered the house and proceeded to the kitchen along with Mrs. Largen and Mrs. Horton. The ladies requested several times that Joyce and Bowers leave and "They just told them to sit down and be quiet, and that they would leave after awhile".

In the kitchen, Trooper Maggard and Mrs. Largen sat and Mrs. Horton stood beside Trooper Maggard. Bowers sat directly opposite the three holding a pistol pointed generally in their direction.

Joyce went outside and in a few minutes returned and told Bowers "When I blow the horn, you come on out". He then went outside and after a short time the horn sounded. Bowers "backed down the hall, still holding his pistol, and went out to the door and they left".

Trooper Maggard testified that the escapees were in the house between ten and twenty minutes. Neither Joyce nor Bowers said anything about the ladies going with them anywhere, nor did they expressly threaten or abuse either of them.

Joyce was convicted of statutory burglary as set forth in Code, § 18.1-89. It provides in part:

"If any person do any of the acts mentioned in § 18.1-88,[1] with intent to commit larceny, or any felony other than murder, rape or robbery, he shall be deemed guilty of statutory burglary * * *."

■ Joyce challenges only the sufficiency of the evidence to show that he had the requisite intent to commit a felony, in this case abduction, when he entered the Largen home.

Under Code, § 18.1-37 abduction, with certain exceptions not here involved, is a felony.

Code, § 18.1-36 defines abduction. It reads in part:

"Any person, who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, *detains* or secretes the person of another, with the intent to deprive such other person of his personal liberty * * * shall be deemed guilty of 'abduction' * * *." (Italics supplied.)

In *Howard* v. *Commonwealth*, 207 Va. 222, 228, 148 S.E.2d 800, 804, we said, "Intent is the purpose formed in a person's mind and may, like any other fact, be shown by circumstances. It is a state of mind which may be proved by a person's conduct or by his statements." See *Banovitch* v. *Commonwealth*, 196 Va. 210, 216, 83 S.E.2d 369, 373; *Merritt* v. *Commonwealth*, 164 Va. 653, 662, 180 S. E. 395, 399; *United States* v. *Mullen*, 278 F.Supp. 410.

From the circumstances shown by the evidence the jury could certainly have concluded that Joyce's purpose in entering the house was to hide from the officers searching for the escapees and their hostage. An obviously necessary element of that intent is that no one be allowed to reveal the whereabouts of those hiding. The jury was therefore justified in inferring from Joyce's intent to use the house as a hideout an intent to prevent any occupants discovered there from leaving to spread the alarm.

■ The conduct of Joyce and Bowers, once inside the house, confirms such an inference. Although Bowers actually guarded the

---

[1] Section 18.1-88. "If any person * * * in the daytime break and enter a dwelling house * * * with intent to commit murder, rape or robbery, he shall be deemed guilty of statutory burglary * * *".

officer and ladies, the evidence clearly shows that Joyce and Bowers were acting in concert and each is equally bound by and answerable for the acts of the other. *Westry v. Commonwealth*, 206 Va. 508, 514, 144 S.E.2d 427, 431. Officer Maggard and the two ladies were constantly watched and were held at gunpoint by Bowers while he and Joyce were in the house. It would be unreasonable to assume that Mrs. Largen and Mrs. Horton were not being deprived of their personal liberty during that time. Such a detention falls under the definition of abduction as set out in § 18.1-36, *supra*, and is a further circumstance tending to show the intent of Joyce when he entered the house.

We hold that the evidence was sufficient to support the conviction of Joyce for breaking and entering the dwelling house of Mrs. Largen with intent to commit abduction.

*Affirmed.*